JOSEPH H. RIEMAN *vs.* JOHN HERMAN VON KAPFF, THE MERCANTILE TRUST COMPANY OF BALTIMORE, and others.

*Sale of Property under the Act of* 1862, *ch.* 156—*Guardian ad Litem—Irregularity not Affecting title of Purchaser.*

Section 1 of the Act of 1862, ch. 156, provides that where one or more persons is or are entitled to an estate for life or for years in land, and other persons are entitled to any interest vested or contingent in the same land, a Court of equity, upon the application of one or more of the parties in interest, may decree the sale thereof, if it shall appear that such sale is to the advantage and interest of said parties, and a sale made in pursuance thereof shall bind all parties *in esse* or thereafter to be born.  HELD:

That where a guardian *ad litem* in proceedings under said section, by some oversight omitted to sign the paper which was filed by him as the answer of the infant defendants, which he had properly verified before the commissioner, and which was returned by the commissioner and accepted by the Court as the answer of the infants, such omission was a mere irregularity that in no manner affected the title of the purchaser of the property.

APPEAL from the Circuit Court of Baltimore City.

The plaintiffs claiming under the will of Herman Von Kapff, deceased, agreed in writing to sell to the defendant a lot of ground in the City of Baltimore, at the corner of Park avenue and Lanvale street, for the sum of twenty-five thousand dollars.  The defendant contending that the plaintiffs were not able to convey to him a good and marketable title to the property, declined to comply with the terms of sale.  Whereupon the bill in this case was filed to obtain a specific performance of the contract of purchase.  The defendant answered the bill.  Certain proceedings had in the case of *Duncan, et al. vs. Duncan, et al.,* were introduced in evidence, and

the case was submitted for a decree. The Court (DENNIS, J.,) thereupon passed the *pro forma* decree requiring the defendant to take the property. From this decree the defendant appealed. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, MCSHERRY and BRISCOE, J.

*George R. Willis*, for the appellant.

*Stewart Brown*, (with whom was *Arthur Geo. Brown*, on the brief,) for the appellees.

ROBINSON, J., delivered the opinion of the Court.

There cannot be, it seems to us, any difficulty as to the appellees' title to the property in question. The late John M. Duncan, it appears, was the owner of three undivided sevenths in this property, and the remaining four-sevenths belonged to his three daughters, Helen, Margaret, and Emily. The father devised and bequeathed his undivided three-sevenths to his wife for life, and upon her death to such of his daughters as should be unmarried; and, on the death or marriage of any of his daughters, the estate of the daughter so dying or marrying, was to go to the unmarried daughters or daughter; and on the death or marriage of the last daughter, the said three undivided sevenths were to be divided among all his daughters then living and the issue of any who might be dead.

The widow died in 1855, leaving five daughters, Helen, Margaret, Emily, Jane, and Eliza Veazey, widow of George Veazey, who had at that time three children, George, I. Parker, and Duncan Veazey, all of whom were infants.

In 1863 a bill was filed by the three daughters, Helen, Margaret and Emily, alleging that they had, with the consent and concurrence of their two sisters, Jane, and Eliza Veazey, contracted to sell the entire property to Herman Von Kapff for the sum of ten thousand five hundred dollars, but that, upon an examination of the title of said property, he had refused to comply with the contract of sale, unless he could be protected against the claims or interests of the issue of the daughters of John M. Duncan then *in esse,* and such as might thereafter be born; that the property was unproductive, yielding but little, if any, income, and that a sale thereof would be to the interest and advantage of all the parties. They, therefore, prayed that a decree might be passed for the sale of the property, in compliance with the terms of the contract made with Von Kapff, and that so much of the purchase money as may be necessary to protect and secure the rights and claims of all persons who may now have, or hereafter have, any interest, contingent or otherwise, in said property, shall be invested, and for such other relief, &c.

This bill was filed under the Act of 1862, chapter 156, which provides, that when any person or persons is or are entitled to an estate for life or for years, and any other person or persons is or are entitled to any interest, vested or contingent, or otherwise in any property, a Court of equity, upon the application of one or more of the parties in interest, may decree the sale thereof, if it shall appear that such sale is to the advantage and interest of said parties, and provided that all persons in interest and in being shall be made parties. The Act further provides that a sale made in pursuance thereof shall bind all parties *in esse* or *thereafter to be born.*

To the bill thus filed, the two sisters, Jane, and Eliza Veazey, and the three infant children of the latter, George, I. Parker, and Duncan Veazey, were made de-

fendants, and under a commission issued to Louis C.
Fischer, commissioner, David Fowler was appointed
guardian *ad litem*, for said infants. The joint and sepa-
rate answer of the three infant defendants, or a paper at
least purporting to be their answer, was filed by the
*guardian ad litem*, but by some oversight the guardian
omitted to sign said paper. It appears, however, that
the guardian made oath before the commissioner that
the matters and things stated in said answer were true
to the best of his knowledge and belief; and the commis-
sioner, in his return to the Court, certifies that he had
"taken the joint and separate answers of the three in-
fants, George, I. Parker, and Duncan Veazey, by their
guardian, David Fowler, in writing." And the paper
thus filed was treated by the Court as the answer of said
infants by their guardian *ad litem*. A few days after
the answer had been filed an amended bill was filed by
the complainants, in which, after referring to and adopt-
ing the bill heretofore filed, and all the allegations
therein contained, they allege that they are entitled to
a partition of the property mentioned in the proceedings,
but that said property is not susceptible of division
among the parties without loss or damage to said par-
ties. And, renewing the prayer in the original bill, the
complainants pray for such other relief as their cause
may require.

After the filing of the amended bill, the answers of
the two adult defendants, Jane, and Eliza Veazey, were
filed, and on the same day a commission to take testi-
mony was issued. The cause was then submitted on
the original and amended bills, answers, and proofs, and
the Court, on the 6th February, 1863, by its decree,
ratified and confirmed the contract of sale, made by the
complainants with Von Kapff, and appointed William
H. Marriott, trustee, to convey by deed all the estate
and interest of the parties to the suit, vested, con-

Rieman *vs.* Von Kapff, *et al.*

tingent, or otherwise, and of all parties entitled to or claiming under the will of John M. Duncan. And the Court further decreed that four-sevenths of the purchase money be paid to Helen, Margaret and Emily F., the said parties being entitled in fee to four undivided sevenths in the property thus sold, and three-sevenths of said purchase money to be paid to the trustee, "to be invested by him under the direction of the Court, subject to the limitations and provisions and terms of the will of John M. Duncan, deceased."

It is obvious, therefore, not only from the pleadings and proof, but from the terms of the decree itself, that the decree for the sale of the property was passed in pursuance of the Act of 1862, chap. 156. And if so, then the only supposed defect in regard to the title of the purchaser under this decree arises from the omission or inadvertence on the part of the *guardian ad litem,* to sign the answer of the infant defendants. But we do not see on what ground this defect can, in any manner, affect the title of the purchaser. No one questions that the answer ought, according to the established practice in chancery, to be signed by the proper parties. This is necessary in order that the Court may see that it is the answer of the parties; and in cases where the defendant is required to answer on oath, his signature to the answer is a matter of importance, because he is liable to indictment for false swearing. The answer of an infant, however, neither admits nor denies the matters set forth in the bill, and the effect of it is to put the complainant to the proof of all the material averments in his bill. In this case, although the guardian omitted to sign the answer, yet it was filed by him as the answer of the infant defendants, and it appears that he made the oath before the commissioner, as required by law, that the matters and things therein stated were true to the best of his knowledge and belief, and that it was returned by the

commissioner and accepted by the Court as the answer of the infants.    But, be that as it may, the Court having jurisdiction of the subject-matter, and of the parties, whatever defect there may have been in the answer, or irregularity in the proceedings, these matters in no manner affected the title of the purchaser.

Now, as to the amended bill, why it was filed the record does not disclose, nor was the counsel for the appellees, on being asked, able to make a satisfactory explanation.    The original bill was filed soon after the passage of the Act of 1862, and upon further consideration it may have been questioned whether that Act applied to a cause in which some of the parties held *in fee* four undivided sevenths, the remaining three-sevenths being held by tenants for life with remainders over to the issue of such life tenants.    But whether embraced by the Act or not, the Court having jurisdiction of the subject-matter and the parties, its decision was binding unless reversed on appeal.    So, in any aspect in which the question may be considered, there cannot be, it seems to us, any objection to the appellees' title to the property, and the decree below will therefore be affirmed.

*Decree affirmed.*